ORIGINAL

Approved: _____
          Alex Rossmiller / Jennifer A. Jude
          Assistant United States Attorneys

Before:   THE HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

19MAG2217

- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA             :    **SEALED COMPLAINT**
                                     :
     - v. -                          :    Violations of
                                     :    18 U.S.C. §§ 242,
                                     :    1519, and 2
CORDELL FITTS,                       :
                                     :    COUNTY OF OFFENSE:
              Defendant.             :    NEW YORK
                                     :
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     MASON POSILKIN, being duly sworn, deposes and says
that he is a Special Agent with the United States Attorney's
Office, Southern District of New York, and charges as follows:

COUNT ONE
(Deprivation of Rights Under Color of Law)

     1.    On or about March 6, 2017, in the Southern
District of New York, CORDELL FITTS, the defendant, under color
of a law, statute, ordinance, regulation, and custom, willfully
subjected a person in a State, to wit, the State of New York, to
the deprivation of a right, privilege, and immunity secured and
protected by the Constitution and laws of the United States, to
wit, the right to be free from excessive use of force, which
deprivation resulted in bodily injury to a person, to wit, while
working as a police officer in the New York City Department of
Homeless Services ("DHS") assigned to the Bellevue Men's Shelter
in Manhattan, New York (the "Bellevue Shelter"), FITTS willfully
punched, kicked, and stomped the head of an individual at the
Bellevue Men's Shelter ("Victim-1") numerous times, resulting in
bodily injury to Victim-1.

     (Title 18, United States Code, Sections 242 and 2.)

COUNT TWO
(Filing False Report)

2.    On or about March 6, 2017, CORDELL FITTS, the
defendant, knowingly altered, destroyed, mutilated, concealed,
covered up, falsified, and made a false entry in a record,
document, and tangible object with the intent to impede,
obstruct, and influence the investigation and proper
administration of a matter within the jurisdiction of a
department and agency of the United States, to wit, FITTS
falsified an incident report concerning his altercation with
Victim-1 with the intent to impede the resulting investigation,
which investigation falls within the jurisdiction of the United
States Attorney's Office for the Southern District of New York.

(Title 18, United States Code, Sections 1519 and 2.)

The bases for my knowledge and for the foregoing
charge are, in part, as follows:

3.    I am a Special Agent with the United States
Attorney's Office, Southern District of New York, where I have
been employed since August 2016.  I have participated in the
investigation of this matter, which has been conducted jointly
with the New York State Department of Investigation.  I am
familiar with the information contained in this affidavit based
on my own personal participation in the investigation, my review
of documents and video and audio recordings, and conversations
that I have had with other law enforcement agents and other
individuals.  Because this affidavit is being submitted for the
limited purpose of establishing probable cause, it does not
include all the facts that I have learned during the course of
my investigation.  Where the contents of documents and where the
actions and statements of others are reported herein, they are
reported in substance and in part, except where otherwise
indicated.

Overview

4.    Based on the information described herein, there
is probable cause to believe that on or about March 6, 2017,
CORDELL FITTS, the defendant, then a New York City DHS police
officer working at the Bellevue Shelter, used excessive force
during an altercation with Victim-1, who was at the Shelter to
seek DHS services.  Specifically, during an altercation between
Victim-1 and several DHS police officers, and after Victim-1 had
already been taken to the ground, FITTS used excessive force by,
among other things, punching, kicking, and stomping on
Victim-1's head approximately eleven times.

2

5.    Additionally, based on the information described herein, there is probable cause to believe that following the excessive force used upon Victim-1 and described in paragraph 4, above, CORDELL FITTS, the defendant, sought to cover up the assault so that it would appear that the use of force against Victim-1 was justified and, concurrently, to conceal the nature of the altercation and force used in order to interfere with any possible subsequent investigation.  In particular, and among other things, FITTS drafted the substance of an incident report form and instructed another DHS officer to adopt the writing. In so doing, FITTS falsified the nature of his use of force and falsely claimed in the incident report that Victim-1 had stated: "I am off my psych medication and going through a lot."

### Background

6.    Based on my training and experience, my review of documents and records, my interviews of witnesses, my conversations with other law enforcement officers, and my review of surveillance video from the Bellevue Shelter, I have learned the following about the locations and individuals involved in the assault of Victim-1:

#### The Scene of the Assault

a.    The Bellevue Shelter is a men's homeless shelter located in Manhattan, New York.  It is maintained by DHS, and its security is provided for by, among others, DHS police officers.

b.    Among other services, the Bellevue Shelter serves as an intake center for clients of DHS.  It includes multiple floors, and has various entry and exit points, including a primary entrance for the screening of individuals entering the property.  The area relevant to this Complaint is an entrance lobby area of the Bellevue Shelter (the "Lobby").

c.    There are surveillance cameras located in the Bellevue Men's Shelter, including cameras covering the general area of the Lobby.

#### Victim-1

d.    Victim-1 previously had been a resident of DHS facilities.  On the night of March 6, 2017, Victim-1 visited the Bellevue Shelter and interacted with DHS personnel in connection with intake processes for housing at a DHS facility.

3

<u>The Defendant and Other Relevant Persons</u>

   e. CORDELL FITTS, the defendant, joined DHS as a police officer in or about March 2012, and was a DHS police officer until in or about March 2018.  On the night of March 6, 2017, FITTS was working as a supervising Sergeant at the Bellevue Center.

   f. Additional DHS police officers were also working at the Bellevue Shelter on March 6, 2017, as further described below.

### The Assault of Victim-1

   7. I have reviewed a videotape copy of surveillance footage of the Lobby of the Bellevue Shelter from March 6, 2017 that was made on a cellphone (the "Video").[1]  A portion of the Video is attached hereto as Exhibit A.[2]  From my review of the Video, I have learned the following, in substance and in part:

   a. As reflected on the Video, Victim-1 was in the Lobby of the Bellevue Shelter and interacting with approximately three DHS police officers, including CORDELL FITTS, the defendant, as well as two other officers ("Officer-1" and "Officer-2", respectively), and a contract security guard ("Guard-1").

   b. In the initial moments of the interaction reflected on the Video, FITTS and Victim-1 exchanged words for approximately five to ten seconds, and FITTS gestured toward an exit area of the Bellevue Shelter.  FITTS then reached toward Victim-1, putting his hands on or about the chest area of Victim-1, and Victim-1 responded by swinging at FITTS with what appear to be closed fists.

   c. As captured on the Video, for approximately 30 seconds, FITTS, Officer-1, and Officer-2 struggled with Victim-1 in a physical altercation, which resulted in Victim-1 being taken to the floor of the Lobby.  During this period, and in the process of subduing Victim-1, another officer entered the altercation ("Officer-3").  When Victim-1 was taken to the

---

[1] The Video depicts a direct view of the Lobby.  Due to the position of the surveillance camera, the Video depicts the physical altercation described in this Complaint from an overhead perspective.  The Video does not contain audio.

[2] The portion of the Video attached as Exhibit A has been edited to obscure the faces of the victim and witnesses.

ground, the Video reflects that Officer-3 was on the legs of Victim-1, and Officer-1 was on or near Victim-1's back.  At this point in the altercation, FITTS was standing next to Victim-1, Officer-2 and Guard-1 were standing a few steps away from Victim-1, and another DHS police officer ("Officer-4") had arrived and was similarly standing back a few steps away from Victim-1.

            d.    At this point, with Victim-1 on the ground and Officer-1 and Officer-3 on top of Victim-1, FITTS can be seen on the Video punching what appears to be Victim-1's head approximately two times.  Subsequently, while Victim-1 remained on the ground, FITTS kicked and stomped on the head of Victim-1 approximately eleven times.

            e.    After kicking and stomping on Victim-1's head, FITTS backed away from Victim-1 for approximately ten seconds, as Officer-1 and Officer-3 were attempting to place handcuffs on Victim-1 while he was face-down on the floor of the Lobby.  Following that brief period of disengagement, the Video shows that FITTS walked back to Victim-1 and punched him in the head area approximately two additional times.  Subsequently, Victim-1 was brought to his feet and escorted out of the Lobby area, at which point the Video recording concludes.

            8.    Other law enforcement officers and I have interviewed Officer-1, Officer-2, Officer-3, Officer-4, Officer-5, and Guard-1.  From those interviews, and my conversations with other law enforcement officers, I have learned the following, in sum and substance and among other things:

            a.    Officer-3 was in a location nearby the Lobby at the time of the confrontation described above.  When Officer-3 heard a commotion, Officer-3 rushed to the Lobby. Upon arriving, Officer-3 attempted to assist in subduing Victim-1, specifically by taking control of Victim-1's legs. Officer-3 stated to law enforcement officers that initially Officer-1 had control of Victim-1's upper body, and after a few moments Officer-1 moved off of Victim-1 and Officer-3 moved to control Victim-1's upper body and attempt to handcuff Victim-1.

            b.    While attempting to secure Victim-1, Officer-3 realized that another officer was kicking and punching Victim-1.  Officer-3 attempted to shield Victim-1 from the blows while simultaneously keeping Victim-1 immobile.  At the time, Officer-3 did not know who was striking Victim-1.  Following a review of the Video, Officer-3 identified CORDELL FITTS, the

5

defendant, as the individual who was kicking and punching
Victim-1.  Officer-3 further stated that Officer-1 believed
those blows to Victim-1 were unnecessary and excessive.

           c.  Officer-1 stated to law enforcement officers
that Officer-1 did not realize during the incident that FITTS
was striking Victim-1 by kicking, punching, or stomping on him.
Following a review of the Video, Officer-1 stated that Officer-1
did not believe the force used by FITTS was reasonable.
Officer-1 further stated that part of the use of force training
Officer-1 received included an instruction not to hit
individuals in the head.

           d.  Officer-2 stated to law enforcement officers
that Officer-2 believed FITTS used excessive force during
certain parts of the incident.  Officer-2 further stated that
Officer-2 believed certain punches and kicks by FITTS were
inconsistent with training Officer-2 received regarding use of
force as a DHS police officer, and that the training Officer-2
received regarding use of force included an instruction that
when use of force was necessary, officers should not strike
individuals in the head.

           e.  Certain officers, including Officer-1 and
Officer-4, stated to law enforcement officers, in sum and
substance, that they recalled Victim-1 being rowdy and
threatening when he entered or re-entered the Bellevue Shelter,
prior to the altercation reflected on the Video.

## Falsification of the Incident Report

           9.  In connection with this incident, a Police
Service Report, or "PSR," dated March 6, 2017, was drafted and
maintained by the DHS police (the "Report").  The Report lists
the "reporting officer" as Officer-1 and the "reviewing
supervisor" as CORDELL FITTS, the defendant.  The text of the
report states, among other things, that "necessary force" was
used to "safely detain" Victim-1.  The Report also states that a
"small pocket knife" fell from the jacket of Victim-1 during the
incident "as [Victim-1] continued to resist arrest and make
efforts to assault DHSPD officers in the form of biting."  The
Report states that prior to the incident Victim-1 purportedly
said, "I wanna hurt someone!  I want to kill someone!"  The
Report further includes the following statement: "After initial
medical assessment [Victim-1] stated 'I am off my psych
medication and going through a lot.'"

10.    Although the Report purports to have been drafted
by Officer-1, in fact, according to Officer-1, CORDELL FITTS,
the defendant, drafted the language included in the Report and
instructed Officer-1 to sign it, which Officer-1 did.    Although
the Report bears his signature, Officer-1 stated that Officer-1
did not have personal knowledge of several of the claims
included in the Report.    In particular, Officer-1 did not hear
Victim-1 say "I am off my psych medication and going through a
lot."    Officer-1 also stated that while Officer-1 was aware that
Victim-1 had a pocket knife on him because Officer-1 had
conducted a security screening of Victim-1 when he entered the
Bellevue Shelter, Officer-1 did not see a knife fall to the
ground during the altercation as described in the report.
Although Officer-1 did not have personal knowledge of certain
statements in the Report to which Officer-1 was signing his
name, Officer-1 did not ask FITTS to amend the Report.

11.    Certain individuals I have interviewed, including
Officer-2, Officer-5, and Guard-1, stated that they are aware
that CORDELL FITTS, the defendant, claimed that Victim-1 bit
FITTS, or attempted to bite him, during the altercation.
However, Officer-2, Officer-3, and Guard-1 each stated to law
enforcement officers that they did not observe Victim-1 biting
FITTS.

12.    None of the officer witnesses I interviewed
recalled hearing Victim-1 say "I am off my psych meds and going
through a lot."

13.    I have also interviewed two medical professionals
who performed an initial medical assessment of Victim-1
following the incident ("Responder-1" and "Responder-2,"
respectively).    From those interviews, I have learned the
following, in substance and in part:

a.    Following the initial evaluation and
treatment of Victim-1, Responder-1 drafted a care report summary
document (the "Prehospital Report") that includes certain
statements made by Victim-1 during the assessment.    The
statements attributed to Victim-1 in the Prehospital Report do
not include any statements about psychological medications,
including any statement along the lines of: "I am off my psych
medication and going through a lot."    Responder-1 further stated
that had Victim-1 made any statements about medications --
including a decision not to take prescribed psychological
medication -- Responder-1 would have recorded such a statement
in the Prehospital Report.

7

b.   Responder-2 similarly stated to law enforcement officers that if Victim-1 had made a statement about psychological medications -- including a statement about not taking such medications -- such information would have been recorded in the Prehospital Report.  In particular, Responder-2 stated, in sum and substance, that such information would be included in the report because any statements regarding psychological or medical condition would be important for medical treatment professionals following the transport of Victim-1 to the hospital.

14.   Based on this investigation, including the facts set forth above, I believe that CORDELL FITTS, the defendant, used excessive force against Victim-1, in violation of his rights under the United States Constitution.  Further, and based on the investigation, I believe that FITTS directed Officer-1 to sign a report that included information that is false, including the claim that "necessary force" was used to "safely detain" Victim-1, and that included information about which Officer-1 had no personal knowledge, such as the claim that Victim-1 stated he was "off [his] psych medication," which I believe is false, to cover up and justify the assault.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of CORDELL FITTS, the defendant, and that he may be arrested and imprisoned or bailed, as the case may be.

MASON POSILKIN
Special Agent
United States Attorney's Office
   Southern District of New York

Sworn to before me this
6th day of March 2019

HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

# Exhibit A

**[Exhibit A submitted to Court on disc.]**